# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| STUART BRIONES LOPEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 6:19-cv-00986-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Stuart Briones Lopez ("Lopez") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Lopez timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED AND REMANDED**.

## I. Factual and Procedural History

Lopez filed his application for a period of disability and DIB on August 16, 2016, alleging he became unable to work beginning May 31, 2016. (Tr. 176-80). The Agency initially denied his claim on October 20, 2016. (Tr. 46-71). Thereafter, Lopez filed a written request for a hearing (tr. 88-102), and on March 27, 2018, Lopez appeared and testified (tr. 27-45). After the hearing,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 17).

the Administrative Law Judge ("ALJ") denied Lopez's claim on August 30, 2018. (Tr. 12-26). Lopez sought review by the Appeals Council, but it declined his request for review on May 14, 2019. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On June 25, 2019, Lopez initiated this action. (*See* doc. 1).

Lopez was forty-one-years-old on his alleged disability onset date. (Tr. 12, 189). He has less than a high school education and past relevant work experience as a janitor, auto lot attendant, and title setter. (Tr. 43, 195). Lopez alleges he is disabled based on spinal stenosis, chronic pain, and degenerative disc disorder. (Tr. 194).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Lopez meets the insured status requirements of the Social Security Act through December 31, 2018, and that Lopez had not engaged in substantial gainful activity since his alleged onset date of May 31, 2016. (Tr. 17). At Step Two, the ALJ found Lopez has the following severe impairment: degenerative disc disease. (Tr. 17-18). At Step Three, the ALJ found Lopez did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18).

Before proceeding to Step Four, the ALJ determined Lopez's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Lopez had the RFC to perform a full range of medium work as defined in 20 C.F.R. §§404.1567(c) and 416.967(c). (Tr. 18-21).

At Step Four, the ALJ determined Lopez is capable of performing past relevant work as a janitor, auto lot attendant, and title setter because this work does not require performance of work-related activities precluded by Lopez's RFC. (Tr. 21). Based on this Step Four finding, there was no need to proceed to Step Five. Accordingly, the ALJ determined Lopez had not been under a disability and denied Lopez's claim. (*Id.*).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Lopez challenges the Commissioner's decision on four specific grounds, contending: (1) the ALJ did not give appropriate weight to the opinions of Lopez's treating physician, Dr. Nolan Hudson; (2) the ALJ's findings regarding Lopez's RFC were incomplete and not supported by substantial evidence; (3) the ALJ improperly rejected Lopez's subjective testimony in violation of Social Security Ruling 16-3p; and (4) the ALJ who conducted Lopez's hearing had not been properly appointed at the time of the hearing and therefore lacked authority to hear the case. (*See* doc. 13 at 2-3). Because Lopez combines issues (1) and (2) in his brief (doc. 13 at 3-8), the undersigned will do the same in addressing those arguments.

5

### A. Whether the ALJ Properly Considered the Opinion of Dr. Nolan Hudson, Lopez's Treating Physician and Whether Substantial Evidence Supports the ALJ's RFC Finding

Before finding a claimant's RFC, the ALJ considers and evaluates the medical opinions in a claimant's record. *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The ALJ considers numerous factors when evaluating a medical opinion, including whether the doctor examined the claimant, whether the doctor treated the claimant, whether the doctor presented evidence to support his or her opinion, and whether the doctor's opinion is consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). A treating doctor's opinion generally is entitled to more weight, and an ALJ must give good reasons for the weight given a treating doctor's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). An ALJ, however, may discount any doctor's opinion, including a treating doctor's opinion, when the opinion is conclusory, the doctor fails to provide objective medical evidence to support his or her opinions, or the opinion is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford v. Commr' Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). The Eleventh Circuit has affirmed when an ALJ "articulated at least one specific reason for disregarding the [treating physician's] opinion and the record supports it." *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. Appx. 944, 948 (11th Cir. 2010).

In March 2018, Dr. Nolan Hudson, Lopez's treating physician, completed a Medical Source Statement ("MSS"). (Tr. 343-45). On the MSS, Dr. Hudson indicated "Yes" when asked "[b]ased on your examinations, observation and treatment of [Lopez], do you believe this patient will experience symptoms (pain) from his underlying medical conditions?" (Tr. 343). Dr. Hudson

explained "patient has significant degenerative changes in his lumbar spine with some central canal stenosis (narrowing) and foraminal narrowing." (*Id.*). Dr. Hudson also indicated "Yes" when asked "[b]ased on your experience as a physician, as well as your examinations, observation and treatment of [Lopez], would you expect that the performance of a job that required him to sit or stand for prolonged periods during an eight hour workday would increase the level of pain he experiences." (*Id.*). Dr. Hudson then wrote that this was "due to disease." (*Id.*). Dr. Hudson also indicated "Yes" that he "would . . . expect that maintaining work posture (sitting, standing, and walking) for a total of eight hours during an eight hour work day, without the opportunity to recline, would increase the level of pain [Lopez] experiences" and that he "expect[ed] the increase in [Lopez's] pain to be to such an extent that it would cause serious distraction from job tasks and/or result in failure to complete job tasks in a timely manner on more than an occasional basis during a typical workday and/or work week." (Tr. 343-44). Dr. Hudson also opined that he believed Lopez's underlying medical condition could reasonably be expected to cause his subjective symptoms and provided the handwritten comment that "patent has severe back pain caused by underlying back problem. (Tr. 344). Finally, Dr. Hudson indicated "No" that he did not believe Lopez was exaggerating his complaints of pain or malingering. (Tr. 345).

The ALJ described Dr. Hudson's opinions contained in the MSS. (Tr. 20). However, the ALJ accorded the opinion only "little weight," citing several reasons. (*Id.*). Specifically, the ALJ noted that Lopez had never been hospitalized for his impairment and consistently takes the same medications, which he concluded suggested Lopez's impairment was controlled through his current medication usage. (Tr. 20). The ALJ also relied on the fact that Lopez reported his prescribed mediation was effective at controlling his pain. (*Id.*). The ALJ also stated that the medical evidence did not support the claimed limitations and pointed out that Dr. Hudson did not

7

specifically identify any records supporting his opinions. (*Id.*). The ALJ recognized that Dr. Hudson noted Lopez's abnormal spinal findings and acknowledged that Lopez's degenerative disc disease is "noteworthy." (*Id.*). However, the ALJ stated that this had to be considered with the fact that Lopez's physical examinations "repeatedly revealed full range of motion and normal gait and station." (*Id.*). The ALJ concluded that the record lacked any evidence that Lopez required frequent medication changes, emergent care, epidural injections, physical therapy, or chronic pain management; rather, according to the ALJ, Lopez's treatment remained sporadic, routine, and conservative in nature, which the ALJ found to be suggestive of "medical stability." (Tr. 20). Although the ALJ articulated several reasons for discounting Dr. Hudson's opinions, these reasons are not supported by substantial evidence and begin to unravel when taking a closer look at the record.

First, according to the ALJ, Dr. Hudson's opinions were given little weight because Lopez was never hospitalized, he consistently took the same medication and had not required frequent medication changes, epidurals, QQ therapy, or pain management and that his medical treatment was sporadic. (Tr. 20). Generally, a claimant's conservative treatment history can be evidence to undermine his allegations of disabling limitations. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). Prior to the relevant period, in October 2014, Lopez underwent an MRI of his lumbar spine, which revealed degenerative disc disease at L4-5 with mild spinal stenosis and moderate right and severe left foraminal stenosis. (Tr. 20, 262). The record reveals that, after reviewing Lopez's spinal MRI, Dr. Hudson recommended Lopez get epidural injections or see a neurosurgeon. (Tr. 263, 277). Lopez reported that he was afraid of needles and had a previous bad experience with a neurosurgeon, and he needed to reflect on the recommendation. (Tr. 263.). It is also undisputed

that Lopez did not have medical insurance (tr. 19) and, therefore, would have difficulty affording more expensive treatments.

The ALJ also concluded that Lopez's treatment was "sporadic." (Tr. 20). However, despite Lopez's lack of medical insurance and income to pay out-of-pocket for doctor's visits, Lopez managed to see Dr. Hudson about every three months. (Tr. 247-345). Specifically, during the relevant period, Lopez saw Dr. Hudson in April 2016, July 2016, October 2016, January 2017, May 2017, and August 2017. (Tr. 251, 258, 331, 334, 337-38, 342). These visits are more accurately characterized as regular, than sporadic.

The ALJ also states that Lopez consistently took the same medication and did not have frequent medication changes.[4] (Tr. 20). While this is an accurate statement of the record, a consistent medication regiment may show that a claimant's condition is stable as opposed to fluctuating, but it is hardly evidence that detracts from Dr. Hudson's opinions. The ALJ also asserts that Lopez "for years" reported his prescribed medication was effective in controlling his pain. (*Id.*). This is not what the record states. To the contrary, Dr. Hudson's treatment notes consistently state that Lopez's pain is controlled "on current medication regimen **and modalities**." (*See e.g.,* tr. 258, 331, 333, 340, 341). While "and modalities" seems like two small words, they make a big difference in Lopez's condition. Specifically, the inclusion of the conjunctive "and" means that medication alone was not effective in controlling Lopez' pain. Instead, Lopez's treatment notes reveal his pain was only controlled when he took his medication **and** stuck to his modalities, which included alternating between sitting in a hot tub and sitting in a recliner and

---

[4] Lopez was prescribed a narcotic pain reliever, Norco (hydrocodone/acetaminophen) to be taken four times a day), along with Cyclobenzaprine, a muscle relaxer, to be taken three times a day, and Mobic (meloxicam) a nonsteroidal anti-inflammatory drug, to be taken twice a day. (See tr. 258).

9

three to five hours lying down. (Tr. 19).

Next, the ALJ acknowledges that Lopez's degenerative disc disease is "noteworthy," but says this must be taken into consideration with his physical examinations that "repeatedly revealed full range of motion and normal gait and station." (Tr. 20). Normal movement and normal gait and station are only a portion of the physical examination. The ALJ failed to discuss the remaining portion of Lopez's physical examinations, which showed pain with movement of the lower back and pain with movement of his neck, both resulting in abnormal findings. (Tr. 253, 332, 334, 337).

Finally, the ALJ notes "the medical evidence . . . does not support the claimed limitations and Dr. Hudson does not identify any records supporting the claimed checkmarks." (Tr. 20). As noted above, the medical evidence does not support the ALJ's rejection of Dr. Hudson's opinions. The undersigned will not substitute his judgment for that of the ALJ; however, it appears that the treatment records support – as opposed to undermine – Dr. Hudson's opinion that Lopez's painful back condition would be worsened by the demands of an eight-hour work day. That aside, the fact that an opinion is conclusory can be good cause to discount it. Opinions that are supported by relevant evidence can be afforded greater weight. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Likewise, "[f]orm reports in which a physician's obligation is only to check a box or fill in the blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993). Although the opinions at issue are presented on a form, and Dr. Hudson used checkmarks to indicate his opinions, Dr. Hudson also provided comments. (Tr. 343-45). Specifically, Dr. Hudson explained that Lopez has significant degenerative changes in his lumbar spine with some central canal stenosis and foraminal narrowing. (Tr. 343). This is an objective finding from Lopez's MRI. Although Dr. Hudson's opinions do not cite specific treatment notes, this alone is insufficient to constitute good cause for discounting it. This is true particularly in light of the fact the record

10

undermines the ALJ's other reasons for discounting his opinions. On remand, the ALJ should reevaluate Dr. Hudson's opinions, specifically taking into consideration that, even if somewhat conservative in nature due to financial and other constraints, Lopez's treatment was hardly routine and sporadic, Lopez's pain was not controlled by mediation alone, but required adherence to specific modalities, and that Lopez's MRI showed degenerative disc disease, which resulted in several abnormal physical findings.

Even if the conclusory nature of Dr. Hudson's opinions could support the ALJ's decision to discount them, the ALJ's finding that Lopez could perform a full range of medium work is not supported by the record. The Commissioner argues that Lopez's reference to the ALJ's RFC finding is "cursory" and therefore it is waived. (Tr. 14 at 13). The ALJ found that Lopez was capable of performing a full range of medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967. (Tr. 18). Although Lopez combines this argument with this argument regarding the weight given to Dr. Hudson's opinions, Lopez makes a few specific arguments. Specifically, Lopez argues it is undisputed that he is prescribed a narcotic pain reliever, Norco, to be taken four times a day. (Doc. 13 at 4-5, n.2). Lopez argues that such a medication regimen, would, at minimum, require a limitation on exposure to work place hazards or machinery, which the ALJ fails to address. (*Id.*). Lopez also specifically points to treatment notes that indicate his pain is controlled through mediation "and modalities." (Doc. 13 at 7, 3). Lopez argues that the ALJ did not take into account he needs to alternate between a hot tub, recliner, and bed on bad days. (*Id.*). Based on these arguments, the undersigned finds that Lopez sufficiently raised the issue of whether the ALJ's RFC is supported by substantial evidence. Even with a brief review, it is apparent that the finding Lopez can perform a full range of medium work is not supported by substantial

evidence. This finding should be reevaluated, in accordance with this opinion, on remand.

### B. Whether the ALJ Properly Discounted Lopez's Subjective Testimony in Accordance with the Eleventh Circuit Pain Standard

Lopez contends the ALJ improperly rejected his subjective testimony, failing to follow Social Security Ruling 16-3p and the Eleventh Circuit Pain Standard. (Doc. 13 at 3). When a claimant attempts to prove disability based on his subjective complaints, he must provide evidence of an underlying medical condition and *either* (1) objective medical evidence confirming the severity of his alleged symptoms, *or* (2) evidence establishing that his medical condition could be reasonably expected to give rise to his alleged symptoms. 20 C.F.R. §§ 404.1529 (a)-(b), 416.929 (a)-(b); SSR 16-3p; *Wilson*, 284 F.3d at 1225-26. If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on this claimant's ability to work. 20 C.F.R. §§ 404.1529 (c)-(d), 416.929 (c)-(d).

The Commissioner contends substantial evidence supports the ALJ's determination that Lopez's statements regarding the intensity, persistence, and functionally limiting effects of his alleged symptoms were not entirely consistent with the medical evidence and the other evidence of record. (Doc. 14 at 14). However, with a closer look at the record, this argument begins to unravel.

As the ALJ notes, the record shows Lopez was diagnosed with cervicalgia, lumbago, radiating back pain, degenerative disc disease, mild spinal stenosis, and moderate right and severe left foraminal stenosis. (Tr. 19). Thus, the ALJ found Lopez's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." (*Id.*). The ALJ continued, "however, [Lopez's] statements concerning the intensity, persistence, and limiting

effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

First, the ALJ describes Lopez's treatment record as documenting "sporadic, but ongoing complaints of back pain." (Tr. 19). Having reviewed the record, Lopez's complaints of back pain are hardly "sporadic." They are consistent and ongoing. (Tr. 247-342). The ALJ next notes that, prior to the alleged onset date, as far back as 2013, records document Lopez having normal gait and station, movements and range of motion. (Tr. 19). The ALJ also notes that Lopez's condition was noted as stable with medication during this time. (*Id.*). However, treatment records from 2013 also note that Lopez "continues to have chronic back pain" (tr. 284), and there are abnormal findings for chronic lower back pain and chronic neck pain that the ALJ does not recognize (tr. 274, 282). It was also during an April 2013 appointment that it was recommended Lopez see a neurosurgeon for his back problems. (Tr. 277).

The ALJ next states that Lopez's physical examinations remained unremarkable in March and September 2014. (Tr. 19). This is hardly the full story. Treatment notes for March 2014 indicate abnormal findings for neck and back pain (tr. 294) and state that Lopez "continues to have back and neck pain that is better. His job description is changing[,] and he is not doing as much anymore." (tr. 292). Although Lopez's September 2014 appointment focused on headaches he was having, treatment notes indicate abnormal back and neck pain, and his physical exam revealed pain with movement of his lower back. (Tr. 302-03). Lopez also reported numbness and pain in his lower extremities at this appointment, which led to an MRI being scheduled. (Tr. 305).

The ALJ recognized the results of the MRI and highlighted the finding of "mild progression of his abnormal findings." (Tr. 19). While it is true that the doctor noted "[m]ild progression at this level compared to the 5/13/2010 study" (tr. 262), it was also that the "MRI of the lumbar spine

shows significant degenerative changes." (Tr. 263). The ALJ noted that Lopez was offered epidural injections and a neurology referral. (Tr. 19).

Next, the ALJ states that, despite reporting an eight-out-of-ten pain level in April 2015, Lopez reported his pain medication remained effective. (Tr. 19). A review of the treatment notes reveals Lopez's pain was controlled with a medication regimen ***and modalities***. (Tr. 308). Again, the ALJ failed to consider the requirement that Lopez's maintain certain modalities to control his pain. At this appointment, a physical exam showed abnormal pain with movement of his neck and lower back. (Tr. 309).

The ALJ highlights that Lopez had normal gait and station, normal movement, and a full range of motion in April 2016. (Tr. 19). While this is true, the same physical exam revealed lower back pain and neck pain with movement (tr. 253), which the ALJ does not mention.

The ALJ then points to treatment notes from July 15, 2016, where he says Lopez's pain was noted as controlled by medication. (Tr. 19). Again, the treatment notes actually say that Lopez's "current medication regimen ***and modalities***" are used to control his pain. (Tr. 258). The ALJ's repeated failure to recognize that Lopez's modalities were an integral part of controlling his pain undermines the conclusion that Lopez's pain was controlled through medication.

Finally, the ALJ references Lopez's most recent treatment records from January through August 2017, and admits that Lopez reported increased back pain. (Tr. 19). However, the ALJ highlights the fact that Lopez's physical examination findings "remained unremarkable," his pain was noted as controlled with medication, and Lopez denied medication side effects. (Tr. 19-20). Again, these records do not state that Lopez's pain was controlled with medication alone. Instead, Lopez required his medication regimen and certain modalities. (Tr. 331, 333, 340, 341). Additionally, although portions of Lopez's physical examinations were normal, the records contain

14

repeated findings of pain with movement, which was noted as abnormal. (Tr. 334, 337, 342).

Thus, as outlined above, the ALJ's reasoning for rejecting the severity of Lopez's subjective complaints of pain is not based on an accurate picture of the record. At best, it is based on cherry-picked evidence, where evidence to support Lopez's complaints was ignored. On remand, the ALJ should consider the record evidence as outlined above (specifically, requirements of a medication regiment and adherence to certain modalities, abnormal findings of pain with movement, etc.) when evaluating Lopez's subjective complaints of pain.

### C. Whether the Presiding ALJ was Properly Appointed and Had Legal Authority to Hear the Case

Relying on *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018), Lopez seeks to remand his case for a new hearing on the grounds that the ALJ presiding over his claim is an inferior officer under the Appointments Clause and was not constitutionally appointed consistent with that provision. (Doc. 13 at 15-16). The Commissioner points out that Lopez never presented this argument – that Social Security ALJs are inferior officers under the Appointments Clause – at any point during the administrative process. (Doc. 14 at 19). In *Lucia*, the Supreme Court held that a party "who makes a *timely* challenge to the constitutional validity of the appointment of an office who adjudicates his case is entitled to relief. 138 S. Ct. at 2055 (citation omitted) (emphasis added). The Commissioner argues that Lopez's failure to assert a challenge to the ALJ's appointment before the agency at any point in the administrative proceeding forfeited his claim. (Doc. 14 at 19).

The Eleventh Circuit has not directly addressed this issue; however, of all the district courts that have considered the issue of Appointment Clause challenges to Social Security Administration ALJs, the overwhelming majority have rejected the argument where the claimant failed to raise the issue during the administrative proceedings. (*See* doc. 14 at 24, n.8 – collecting cases).

15

Specifically, district courts within this Circuit have recognized, a claimant can forfeit an Appointments Clause challenge to the ALJ who heard his case by failing to raise the challenge before the Social Security Administration, *Abbington v. Berryhill*, 1:17-00552-N, 2018 WL 6571208 (S.D. Ala. Dec. 13, 2018); *Crowe v. Comm'r of Soc. Sec.*, 5:18-cv-00141-TES-CHW, 2019 WL 5243087, at *3 n.1 (M.D. Ga. Aug. 12, 2019); *Del Valle-Roman v. Berryhill*, 6:18-cv-1158-Orl-TBS, 2019 WL 1281171, at *2 (M.D. Fla. Mar. 20, 2019); *Mercer v. Comm'r of Soc. Sec.*, 2:17-cv-02158-JHE, 2019 WL 1433762, at *9 n.5 (N.D. Ala. Mar. 29, 2019), and Lopez has not shown sufficient cause to excuse the forfeiture. Lopez's request to remand on this issue is **DENIED**.

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the undersigned **RECOMMENDS** that the decision of the Commissioner of Social Security denying Lopez's claim for a period of disability and disability insurance benefits is **REVERSED** and this action **REMANDED**. A separate order will be entered.

DONE this 22nd day of October, 2020.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE